**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS**

**UNITED STATES OF AMERICA**,

    Plaintiff,

v.

**LIANG LI**,

    Defendant.

Case No. 1:18-CR-00001

**DECISION AND ORDER DENYING MOTION FOR LEAVE TO WITHDRAW GUILTY PLEA**

## I. INTRODUCTION

Defendant Liang Li ("Defendant") was a notary public. On January 8, 2018, Defendant notarized a statement of a father's consent to a passport application for his child under age 16. He swore under oath that he had witnessed the father sign and had verified the father's identification. Because of innocent errors in how the form was filled out, the passport office rejected it. On January 10, the mother returned to Defendant to notarize a corrected statement of consent. Unfortunately, the child's father had already flown back home to China. Even so, Defendant, in violation of the oath printed on the form, notarized the document and affirmed that the father had signed it in his presence and shown identification.

Defendant was charged with aiding and abetting the making of a false statement on a passport application, a felony. A week before trial, he signed an agreement with the Government to change his plea from not guilty to guilty. He then came to court and, after careful questioning from the judge to determine that he knew what he was doing, he went through with the change of plea, even though he did not feel he had committed a serious crime. He almost immediately regretted his decision to forgo trial.

Before the Court is Defendant Liang Li's Presentence Motion for Leave to Withdraw Guilty Plea ("Motion," Aug. 8, 2018, ECF No. 39). The Government filed an Opposition (Aug. 21, 2018, ECF No. 46) and a Supplemental Opposition (Sept. 10, 2018, ECF No. 67). Defendant's reply to the Opposition was waived (*see* Order Setting Briefing Schedule, Aug. 15, 2018, ECF No. 42), but Defendant chose to file a Reply (Sept. 11, 2018, ECF No. 68) to the Supplemental Opposition. The matter came on for an evidentiary hearing on September 12, 2018. After having carefully considered the parties' briefs, the testimony and documentary evidence submitted electronically and at the hearing, and the oral arguments of counsel, the Court denied the motion from the bench. This Decision and Order memorializes its reasoning.

## II.  PROCEDURAL HISTORY

On February 2, 2018, the grand jury indicted Defendant Liang Li ("Defendant") and a co-defendant, Yanan Li,[1] on one count of false statement in a passport application, in violation of 18 U.S.C. § 1542 and 18 U.S.C. § 2 (aiding and abetting), and indicted Defendant alone on one count of false document, in violation of 18 U.S.C. § 1001(a)(3). (Indictment, ECF No. 3.) On February 8, Rene C. Holmes entered an appearance as counsel for Defendant. (Notice, ECF No. 7.) Also on February 8, Defendant, represented by counsel, was arraigned before Magistrate Judge Heather L. Kennedy and entered a not guilty plea to both counts. (Minute Entry, ECF No. 8.) The matter was set for a jury trial on April 10, 2018. (*Id.*)

On March 12, the parties filed a Joint Motion to Continue Trial Date (ECF No. 13) to May 1 to allow more time for plea negotiations. At a hearing on March 22, the parties orally withdrew their joint motion. (Minute Entry, ECF No. 17.) The Court told the parties that if they did not request a status conference by March 27, the Court would set a pretrial conference. (*Id.*)

---

[1] To date, Yanan Li has not been brought before the Court. A warrant for Yanan Li's arrest is outstanding.

On March 27, no request having been made, the Court set a pretrial conference for Friday, March 30. At the pretrial conference, the Government renewed the motion to continue the trial, in part because the parties were very close to agreement but also because of difficulty in bringing witnesses from China in time for trial on April 10. (Minute Entry, Mar. 30, 2018, ECF No. 22.)[2] The prosecutor informed the Court that the deadline for acceptance of the Government's offer was close of business Monday, April 3. Defense counsel Holmes informed the Court that she had just received a new plea offer and had not gone over it yet with Defendant, but that she was confident a resolution short of trial could be reached. Defense counsel joined the prosecutor's motion for a trial continuance. The prosecutor told the Court that the offer contemplated a guideline range of 0–6 months. The Court did not rule on the renewed motion for a trial continuance, but continued the pretrial conference to Tuesday, April 3, and expressed its willingness to convert the conference to a change-of-plea hearing if the parties reached agreement.

On Tuesday, April 3, the parties submitted a signed Plea Agreement (ECF No. 21). The signatures of Defendant and Rene Holmes are dated April 2; the signature of Assistant United States Attorney James Benedetto is dated April 3. (*Id.*) In the Plea Agreement, Defendant agreed to plead guilty to Count 1, false statement in a passport application, and the Government agreed to recommend a sentence on the low end of the guideline range. The elements of the offense to which the parties agreed were "First, that Defendant made a false statement in an application for a passport for his own use of [*sic*] that of another; Second, that the defendant did so with the intent to induce or secure the issuance of a passport under the authority of the United States and contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws; and

---

[2] The Court has confirmed these details from the March 30 conference by listening to the audio recording of the proceedings. An official transcript is not yet available.

3

1  Third, that the Defendant acted knowingly and willfully." (*Id.* ¶ 5.)[3]

2  On the same day, Defendant appeared with counsel Holmes for a change of plea. Also appearing with Defendant was Mark Scoggins, the senior attorney in the firm. The Government was represented by AUSA Benedetto. Defendant was placed under oath. (Transcript, ECF No. 68-1, at 3:11.) The Court asked Defendant a series of biographical questions that established he was able to understand the proceedings in English and express himself adequately in English without need of a Chinese interpreter. (*Id.* 8–10.) In particular, he told the Court that he had attended the local community college for almost three years and instruction was in English. Defendant responded to some of the Court's questions in full sentences:

> THE COURT: How much work experience have you had since leaving, say, high school?
> THE DEFENDANT: I have a lot of working experience.
> THE COURT: Prior to the filing of this case, how long were you working?
> THE DEFENDANT: I've been working ever since I came to this island.
> THE COURT: What year was that?
> THE DEFENDANT: Ten years. Since 2004.
> THE COURT: So about 14 years?
> THE DEFENDANT: Fourteen years, yes.

(*Id.* 10:20–11:4.)

Defendant affirmed that he was not under the influence of any intoxicating substance and that his mind was free and clear. (*Id.* 11:15–21.) He affirmed that he had received a copy of the indictment, had had an opportunity to fully discuss the charges with his counsel Ms. Holmes, and was fully satisfied with her representation and advice. (*Id.* 12:5–13:1.) The rest of the colloquy merits reproducing at length:

> THE COURT: Let's turn to the written Plea Agreement. I discussed it openly in front of you with the attorneys. Did you have an opportunity to read this and discuss this Plea Agreement with your attorney before you signed it?
> THE DEFENDANT: Yes, I did get a chance.
> THE COURT: In fact, maybe I should ask the preliminary question: On

---

[3] There is no Ninth Circuit pattern jury instruction for the elements of this offense.

4

| | page 11 of 12 at the bottom there, it says Liang Li, with a signature above it, defendant, dated 4/2/18. Is that your signature, sir?
|---|---|
| 1 | |
| | THE DEFENDANT: Yes, that's my signature.
| 2 | |
| | THE COURT: Does this Plea Agreement represent in its entirety any understanding that you may have with the United States Government? Does this Plea Agreement contain all your understanding that you may have with the United States Government?
| 3 | |
| 4 | |
| | THE DEFENDANT: Yes.
| 5 | THE COURT: Do you understand the terms of the Plea Agreement?
| | THE DEFENDANT: Yes. I understand.
| 6 | THE COURT: Has anyone made any promise or assurance to you that is not contained in the Plea Agreement to persuade you to accept this Plea Agreement?
| 7 | |
| | THE DEFENDANT: No.
| 8 | THE COURT: So no one on the side talked to you and mentioned any promises, especially someone affiliated with the United States Government, that's not contained in the Plea Agreement?
| 9 | |
| | THE DEFENDANT: No.
| 10 | THE COURT: I saw you say something or your lips moving, but I didn't hear it. So "no." Has anyone threatened you in any way to persuade you to accept this Plea Agreement?
| 11 | |
| | THE DEFENDANT: No.
| 12 | …
| | THE COURT: … Mr. Li, has anyone attempted in any way to force you to come in this afternoon to enter a guilty plea?
| 13 | |
| | THE DEFENDANT: No.
| 14 | THE COURT: Has anyone threatened you in any way to enter a guilty plea?
| 15 | THE DEFENDANT: No.
| | THE COURT: Has anyone made any promises or assurances of any kind to get you to plead guilty this afternoon, other than those promises contained in this written Plea Agreement?
| 16 | |
| 17 | THE DEFENDANT: No.
| | THE COURT: So are you here to enter a guilty plea to count one in the indictment of your own free will because you are guilty of this offense?
| 18 | |
| | THE DEFENDANT: Yes.

(*Id.* 13:2–14:16, 15:13–16:5)

After reviewing the terms of the plea agreement, the Court warned the Defendant of the rights he would be giving up by changing his plea to guilty:

> THE COURT: … So do you understand that you then have the right to a trial by jury? In fact, we still have your trial date reserved for April 10th. Do you understand that?

| | |
|---|---|
| 1 | THE DEFENDANT: Yes, I understand. |

(*Id.* 27:22–28:2)

The Court then described at some length the jury trial process, the presumption of innocence, the Government's burden of proof beyond a reasonable doubt, and Defendant's right to call his own witnesses and cross-examine the Government's witnesses. (*Id.* 29–33.) Defendant affirmed that he understood that by pleading guilty there would be no trial. (*Id.* 33:13–19.) The Court reviewed the elements of the crime of false statement in a passport application, and Defendant affirmed that he understood them. (*Id.* 34:14–35:1.) The Court then asked Defendant to "tell me in your own words, what is it that you did that you believe is, in fact, in violation of the law." (*Id.* 36:12–14.)

> THE DEFENDANT: I notarize a paper, the one – and the person lie in front of me.
> THE COURT: So the document that you notarized represented a certain person was doing it, but you knew that it was not true?
> THE DEFENDANT: I sign a consent form when the person is not in front of me.
> THE COURT: Okay. And you knew that the United States Government was going to rely on that consent form?
> THE DEFENDANT: Yes.
> THE COURT: Specifically in the area of the passport application for another?
> THE DEFENDANT: Yes, Your Honor.

(*Id.* 36:17–37:5)

After the prosecutor recited the factual basis for the plea, the Court spoke directly to Defendant:

> THE COURT: … Mr. Li, before I make a final decision to accept [the guilty plea], I want to make sure you understand, knowing all the facts that just transpired, as well as your rights under the law, are you prepared to go forward and waive the rights, give up those rights to a trial, basically, and all the rights associated with the trial and enter a guilty plea to this count one? Are you willing to do that now?

>           THE DEFENDANT: Yes, Your Honor.
>           THE COURT: All right. At this time I'm going to ask you to please stand up. Mr. Liang Li, how do you now plead to the charge, as to count one in the indictment, to the offense of false statement in a passport application, in violation of 18 U.S.C., Section 1542, guilty or not guilty?
>           THE DEFENDANT: Guilty, Your Honor.
>           THE COURT: I know it's difficult, but I see the reasons.
>           …
>           THE COURT: So at this time, it is the finding of this Court . . . that the Defendant Mr. Li is fully competent and capable of entering an informed plea, and that the Defendant Mr. Li is aware of the nature of the charge and consequences of the plea, and that the plea of guilty is a knowing and voluntary plea, supported by an independent basis in fact, containing each of the essential elements of the offense.

(*Id.* 42:14–43:21.) The Court accepted the guilty plea and set sentencing for August 17, 2018. Subsequently, sentencing was continued to September 7.

On May 29, 2018, new counsel, Janet H. King, entered an appearance for Defendant. (Notice of Entry and Appearance, ECF No. 27.) On July 19, citing "professional reasons," Rene Holmes moved to withdraw as counsel (ECF No. 31). The Court denied the motion without prejudice for failure to show good cause. (Order, ECF No. 32.) On August 8, the same day Defendant moved to withdraw his guilty plea, Holmes renewed her motion to withdraw as counsel, calling attention to statements in the July 12 initial presentence report (ECF No. 30) that create a conflict of interest between Defendant and Scoggins Law Office, Holmes's firm. (Motion to Withdraw as Counsel, ECF No. 37.) The Court granted the renewed motion to withdraw. (Order, Aug. 15, 2018, ECF No. 41.)

### III.   LEGAL STANDARD

A defendant may withdraw a guilty plea after the court has accepted it but before sentencing if the defendant "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). The burden to show a fair and just reason is on the defendant, but "the standard is applied liberally." *United States v. Davis,* 428 F.3d 802, 805 (9th Cir. 2005). "Fair and

just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." *United States v. Ortega-Ascanio,* 376 F.3d 879, 883 (9th Cir. 2004). "[A] defense counsel's erroneous advice may warrant withdrawing a plea even if the defendant does not prove that he would not have pleaded guilty but for the erroneous advice." *Davis,* 428 F.3d at 807. However, to uphold the integrity and solemnity of the change-of-plea colloquy, a court must not allow the plea to be withdrawn merely because the defendant has had a change of heart. *See United States v. Rios-Ortiz,* 830 F.2d 1067, 1069–70 (9th Cir. 1987). To "allow a defendant to withdraw his guilty plea simply on a lark[,]" after he "has sworn in open court that he actually committed the crimes, after he has stated that he is pleading guilty because he is guilty, after the court has found a factual basis for the plea, . . . debases the judicial proceeding at which a defendant pleads and the court accepts his plea[.]" *United States v. Hyde,* 520 US. 670, 676 (1997). The decision whether to allow withdrawal of a guilty plea is "within the sound discretion of the district court." *United States v. Alber,* 56 F.3d 1106, 1111 (9th Cir. 1995).

## IV.  DISCUSSION

In the Motion and at the hearing, Li asserted he should be permitted to withdraw his guilty plea because (1) it was not knowing and voluntary and (2) he is actually innocent.

Defendant believes that outrageous pressure to plead out from his former counsel and an inadequate plea colloquy make his guilty plea unknowing and involuntary. In the Motion, he asserts that he "had difficulty in accepting the fact allegations but did so anyway out of fear of guaranteed jail time if Defendant chose to go to trial." (Motion ¶ 16.) In an attached declaration, he complained that he did not get a copy of the proposed plea agreement until Friday, March 30, and his attorneys refused to meet with him on the holiday weekend (Easter) and made him wait

until Monday, April 2, the day before the change-of-plea hearing, to go over the agreement. ("First Li Declaration," ECF No. 39-1 ¶ 4.) At the Monday meeting, he and his mother begged his attorneys for more time. (*Id.* ¶ 5.) Holmes and Scoggins told him he had no chance of winning at trial and risked 12–16 months in prison if he lost. (*Id.*) In a second declaration dated September 4, 2018, Defendant stated that he brought his copy of the plea agreement with his handwritten notations to the Monday meeting, but Holmes and Scoggins refused to look at it. ("Second Li Declaration," ECF No. 58-1, ¶ 7.)[4] He said Scoggins was angry and shouted at him, telling him the offense was "strict liability" and he was guilty simply because he notarized the document without the signatory's presence. (*Id.* ¶ 8.) He asserted that this posture was very different from early in the representation, when Scoggins told him the case was "silly and stupid" and he should not even have been charged. (*Id.*) He claimed Holmes told him he would be sexually assaulted if he went to prison. (*Id.* ¶ 10.) In a message to a Department of Justice help line, AskDOJ@usdoj.gov (Aug. 12, 2018, ECF No. 58-4), he ascribed the threat to both Holmes and Scoggins. He made the same accusation on the stand at the September 12 hearing.[5]

Only a few days after the change of plea, Defendant reached out to Hawaii's Office of the Ombudsman for help. In an email sent on April 8 (ECF No. 39-2), he stated, "I did not get enough time to go through all the details, I signed the plea agreement reluctantly, but I don't think that I deserve to be a felon in this case."[6]

---

[4] The Second Li Declaration was attached to a different motion. At the hearing, the parties agreed to submit it as evidence on the Motion to Withdraw Plea as well. Li's marked copy of the Plea Agreement is at ECF No. 58-3.

[5] Holmes and Scoggins testified at the hearing and denied making any such threat. Defendant wished to call his mother and his ex-wife to the stand, to rebut any inference of recent fabrication by testifying that Defendant had told them about the threat soon after April 2. The mother and ex-wife had not been subpoenaed and were not in the courtroom, and the Court denied Defendant a continuance to bring them in. However, without objection from the Government, the Court accepted Defendant's proffer that they would have so testified.

[6] The Hawaii Ombudsman's Office responded, appropriately, that it did not have authority to investigate the actions of federal courts and agencies.

When one looks objectively at what occurred in the plea negotiations leading up to the change of plea, one does not see a picture of inadequate and unprofessional representation. The Government's initial offer, conveyed in a letter dated February 22, 2018 (Def. Ex. C), contemplated a guideline range, after various enhancements, of 10–16 months or 12–18 months. Even with a Government recommendation of a low-end sentence, Defendant would be facing significant prison time. Billing records (ECF No. 68-2) show that on February 27, defense counsel reviewed the offer with Defendant, discussed the sentencing guidelines, and emailed the prosecutor. Holmes testified at the hearing that she tried to get the prosecutor to drop the charges or at least allow Defendant to plead to a misdemeanor, but was unsuccessful. The February 22 offer was not accepted. Less than two weeks before trial, however, the Government improved the offer to one that would recommend a sentence of probation (the low end of the 0–6 month range) and avoid incarceration altogether.[7] In short, defense counsel worked the case and secured a much improved offer. The Government set a deadline of close of business Monday, April 2, for an acceptance, and defense counsel had to operate within it. Uncontradicted testimony at the motion hearing, supported by billing records, was that on April 2 defense counsel spent more than six hours on the case, including meeting with Defendant, and that Scoggins met with Defendant again the next morning. Furthermore, Defendant himself testified that Holmes read the Plea Agreement to him page by page.

Contrast this picture with that in *United States v. Davis,* 428 F.3d 802 (9th Cir. 2005), which Defendant cites with approval in his Motion and where the Ninth Circuit vacated the district court's denial of a motion to withdraw plea and remanded for rehearing. There, defense counsel

---

[7] Defendant initially appeared on a summons and was granted pretrial release. He has never been in custody on this matter.

10

misled the defendant, who was facing serious charges related to drug distribution, to believe he had a realistic chance of getting a sentence of probation. *Davis,* 428 F.3d at 804. Here, however, defense counsel secured for Defendant a favorable plea offer that would include a recommendation of probation. Defense counsel did not mischaracterize the terms of the plea offer or the likely consequences of accepting it.

Defendant is angry that he was rushed to decide whether to accept the no-prison offer and give up his trial right. But when directed at former counsel, who spent the better part of decision day, April 2, meeting with him to go over the offer, the anger is misplaced. It was the prosecutor, not defense counsel, who had control over the deadline. In the message to AskDOJ, Defendant acknowledged that it was the prosecutor who forced the issue by not reducing or dismissing the charges and "rush[ing] me to sign the plea agreement instead." (ECF No. 58-4, p. 3.) Former counsel properly and responsibly urged Defendant to recognize that by rejecting the no-prison offer, he was likely to end up with a conviction after trial and a sentence that includes significant prison time.

Defendant complains that former counsel turned a deaf ear to his reservations about pleading guilty when he did not feel like a felon. Holmes's conduct at the change-of-plea hearing, however, belies that complaint. When the prosecutor, reciting the factual basis, told the Court that the child's father had not signed the consent form in Defendant's presence either on January 8 or on January 10 (Tr. 39:15–21), Holmes corrected that statement. She made it clear that the father had in fact appeared before Defendant and signed in his presence on January 8; that on January 10 Defendant was told the signature on the new form was the father's; and that Defendant was attempting to correct an error. (*Id.* 40:14–41:1.) The prosecutor confirmed that "[t]he Government would agree with everything that Ms. Holmes said." (*Id.* 41:2–3.) Holmes appropriately limited

the factual basis to facts that her client was prepared to admit.

Two specific allegations require some attention. Defendant alleges that Scoggins told him false statement on a passport application is a strict liability crime, when in fact it is not. If the allegation is true – neither party questioned Scoggins about it at the hearing – it is a forgivable misstatement. In all his filings and his testimony, Defendant has insisted that all he meant to do when he notarized the second consent form was to correct innocent errors he made on the first one, that he had no malign intent. What Scoggins may have been trying to get across to Defendant was that he could be guilty as charged even if he did not have an evil motive, so long as he knew that the statement was false and the purpose of the application was to secure a passport.

The other, more serious allegation is that former counsel scared Defendant into pleading guilty by conjuring the nightmare of sexual assault in prison. On the stand, both Holmes and Scoggins vigorously denied they had made such a threat or would ever so threaten a client. The Court finds their testimony on this point to be credible. Former counsel would have had no motive to put their bar license on the line to get a client to accept a plea offer.

For these reasons, the Court finds that former counsel's performance of their professional obligations in plea negotiations and at the change-of-plea hearing was not deficient and did not overbear Defendant's will and force him to plead guilty. It was no secret that this guilty plea was a bitter pill for Defendant to swallow. The Court acknowledged it immediately after Defendant admitted he was guilty: "I know it's difficult, but I see the reasons." (Tr. 43:7–8.)

Counsel's performance aside, nothing else in the plea colloquy indicates that Defendant's guilty plea was not knowing, intelligent, and voluntary. The Court recognizes that Defendant is not under a burden to show that the colloquy was defective in order to attain the relief he seeks. *See Davis,* 428 F.3d at 807 ("a defendant does not have to prove that his plea was invalid in order

to justify withdrawal"). But he does have to show a fair and just reason. The Court established that Defendant was fluent in English and not under the influence of drugs or alcohol. It reviewed in great detail the rights he would be giving up by pleading guilty, including the right to trial by jury and to put the Government to its burden. At the hearing, current defense counsel argued that the colloquy was flawed because the Court often posed yes-no questions to Defendant instead of asking him open-ended questions that would have compelled him to express ideas in his own words. This argument is not persuasive. Defendant was under oath the whole time. If the Court posed a question to him that he did not fully understand, he could have said so instead of answering yes or no. At no point did he do so. Indeed, the undersigned judge took Defendant's change of plea and recalls that his answers were firm, clear, and without hesitation. Moreover, the Court directly asked Defendant to say, in his own words, what he did that violated the law (Tr. 36:12–14), and he replied that he "sign a consent form when the person is not in front of me" (*id.* 36:22–23). When the Court asked him if he knew that the Government was going to rely on the consent form for another person's passport application, he answered yes. (*Id.* 36:24–37:5.)

The Court does not doubt that Defendant changed his plea reluctantly, or that he soon regretted what he had done and sincerely wishes that he could take it back. Probably every adult feels that there is some important decision she has made that she wishes she could do over. But that does not mean she did not make that decision voluntarily and did not know what she was doing at the time. Post-plea regret is not an intervening circumstance that justifies allowing a person to withdraw a guilty plea.

Defendant also wishes to withdraw his guilty plea because he is actually innocent. *See United States v. Padilla-Galarza,* 351 F.3d 594, 597 (1st Cir. 2003) (finding that "whether there is a serious claim of actual innocence" is a relevant factor in determining whether to allow

withdrawal of a guilty plea); *United States v. Carroll,* 412 F.3d 787, 792 (7th Cir. 2005) (stating that "actual innocence is a valid ground for withdrawing a guilty plea"). Here, there is no serious claim of actual innocence. On his factual admissions, he could be found guilty as a principal or as an aider and abettor. On the January 10 Form DS-3053 Statement of Consent (Def. Ex. B), Defendant falsely stated "that I have personally witnessed [affiant] sign this document, and that I have properly verified the identity of the affiant by personally viewing the above notated identification document and the matching photocopy." Furthermore, he backdated the form to January 8, the date on which he properly notarized the first Statement of Consent in the father's presence. There can be no question that Defendant knew the purpose of the document, as it is titled "Statement of Consent: Issuance of a U.S. Passport to a Minor Under Age 16." In bold, full capital letters in the middle of page is printed "STOP! YOU MUST SIGN THIS FORM IN FRONT OF A NOTARY." The evidence supports a reasonable inference that Defendant knew what he was doing and did it willingly.

If Defendant were to prevail on a defense that the notarial statement is not part of the Statement of Consent proper and therefore not "in an application" for a U.S. passport, he would still be guilty as charged as an aider or abettor under 18 U.S.C. § 2. A defendant is as guilty as a principal "when he consciously shares in any criminal act whether there is a conspiracy or not." *United States v. Sanchez-Mata,* 925 F.2d 1166, 1169 (9th Cir. 1991). It is necessary only that he "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." *Id.* (quoting *Nye & Nissen v. United States,* 336 US. 613, 620 (1948)). Someone forged the father's signature on the second Statement of Consent. That person committed the offense of false statement on a passport application. Defendant associated himself with the venture by notarizing the document. He admits

that he wished to correct errors in the first Statement of Consent (Def. Ex. A) – a mailbox number was given instead of a street address, and Defendant accidentally printed the father's name under "Name of Notary." The only reason to make the corrections, however, would be to help the parents get a passport for the child. A notary knows that his work is essential in order for the affiant to effectuate his or her purpose with the document. Whether the notary has a personal interest in the transaction being consummated is irrelevant.

Because Defendant does not have a serious claim of actual innocence, his subjective belief in his innocence is not a fair and just reason to allow him to withdraw his guilty plea.

## V. CONCLUSION

Next to sentencing, the plea colloquy is the most solemn business that a trial court undertakes. It marks a person's transition from innocent in the eyes of the law to the status of a convict – often a felon, with loss of many civil rights and, in most cases, the expectation of incarceration. The Court takes it seriously and does all it can to ensure that defendants recognize the magnitude of their decision. There can hardly be a defendant, no matter how strong their consciousness of guilt, who does not feel some reluctance in changing their plea to guilty. To allow a defendant who is not actually innocent, who received adequate representation, and who knew what he was doing when he pled guilty, to withdraw that plea because of regret, even deep and sincere regret, would pervert the process. For these reasons, Defendant's Presentence Motion for Leave to Withdraw Guilty Plea is denied.

SO ORDERED this 14th day of September, 2018.

/s/ *signature*
RAMONA V. MANGLONA
Chief Judge